## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| ALABAMA ALWAYS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. ___2025-367___ |
| | ) | |
| REX VAUGHN, SAM BLAKE- | ) | |
| MORE, DWIGHT GAMBLE, JAMES | ) | |
| HARWELL, TAYLOR HATCHETT, | ) | |
| DR. WILLIAM SALISKI, JR., and | ) | |
| JOHN MCMILLAN, | ) | |
| | ) | |
| Defendants. | ) | |

## **COMPLAINT**

Plaintiff Alabama Always, LLC brings this complaint against commissioners and the director of the Alabama Medical Cannabis Commission to assert claims under 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights guaranteed by the Constitution of the United States. Commissioners and staff members, including the director, of the Alabama Medical Cannabis Commission, acting in concert with their legal counsel, knowingly violated clearly established First and Fourteenth Amendment rights of Alabama Always. In further support, Alabama Always states the following:

## **Introduction**

1.    Alabama Always is an applicant for an integrated facility license under

Alabama's (somewhat) new medical cannabis licensure program, created by legislation enacted in 2021 entitled the Darren Wesley "Ato" Hall Compassion Act (the Compassion Act). Indeed, Alabama Always was the only qualified applicant when the Commission first began the licensing process in 2022. Alabama Always met all of the stringent program requirements at the time it filed its application, including having raised $15 million in paid-in capital, built a multi-million-dollar cultivation facility in order to meet the new program's stringent requirements that licensees be able to provide medical cannabis within 60 days of receiving a license, and satisfied all other requirements of the Compassion Act.

2.    The licensing process has been riddled with problems,[1] resulting in dozens of lawsuits against the Commission and the Commissioners. Alabama Always attempted to address these problems with the Commission and wrote letters to the Commissioners to explain its concerns with the process and suggest solutions to the problems plaguing the licensing process. Alabama Always has filed lawsuits against the Commission and obtained injunctions to force the Commission to comply with the Compassion Act, the Alabama Administrative Procedure Act, and the Open Meetings Act.

---

[1] One commentator has referred to it as the "bungled, absurdly stubborn and obviously failed process for awarding licenses." Josh Moon, *Opinion: Bill over medical cannabis licensing process, limiting AMCC is the right step*, Alabama Political Reporter (Feb. 27, 2025, 6:42 AM), https://www.alreporter.com/2025/02/27/opinion-bill-starting-over-medical-cannabis-licensing-process-limiting-amcc-is-right-step/.

3.     The Commissioners, the staff, and their legal counsel have responded to Alabama Always's lawsuits and letters with continued noncompliance with the law, and with threats and vindictive acts of retaliation against Alabama Always, which has done nothing more than exercise its First Amendment rights to free speech and to petition the government for redress of its grievances.

4.     Since Alabama Always filed these lawsuits, the Commissioners have refused to fairly consider Alabama Always's application for a license. In fact, there has been a consistent pattern and practice of retaliatory, discriminatory conduct dating back to the summer of 2023, shortly after the Commission engaged in its first failed attempt to issue integrated facility licenses followed by Alabama Always's first lawsuit. This pattern and practice of retaliatory conduct shows that there is concerted activity and agreement among the Commissioners, the staff, and their legal counsel to retaliate against Alabama Always for exercising its First Amendment rights. As will be seen, the acts of retaliation, including the Commission's refusal to award Alabama Always an integrated facility license, are contrary to Alabama law, and the Defendants' acts lie outside of their statutory authority, because the Compassion Act and the Alabama Administrative Procedure Act do not permit officials to make decisions in retaliation for the exercise of First Amendment rights.

5.     In their December 2024 meeting, for example, the Commissioners

publicly acknowledged that a motivating factor in their refusal to consider Alabama Always for a license was its filing of lawsuits over the Commission's repeated failure to follow the law. They publicly referred to Alabama Always and other litigants as the "bad guys" for filing the lawsuits, and made clear that if litigants such as Alabama Always received a license, then the "bad guys" would "win." The Commission's director, Defendant McMillan, accused Alabama Always of filing "frivolous" lawsuits challenging the process as "a delaying tactic." These statements constitute direct evidence of the Commissioners,' as well as the staff's and their legal counsel's, intent to retaliate against Alabama Always for exercising its First Amendment rights.

6.    The right to petition the government for redress of grievances, including sending letters to government officials and filing lawsuits, is "one of the most precious of the liberties safeguarded by the Bill of Rights" and is "high in the hierarchy of First Amendment values." *See Lozman v. City of Riviera Beach, Fla.*, 585 U.S. 87, 101 (2018) (cleaned up). But not only does the First Amendment protect the rights of speech and petition, it also guarantees "the right to be free from retaliation by a public official for the exercise of that right." *See DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1288–89 (11th Cir. 2019).

7.    Alabama Always brings this lawsuit to vindicate its constitutional rights. The actions of the Commissioners' and its director amount to intentional and

willful discrimination and retaliation for the protected speech of Alabama Always. The Commissioners have intentionally and willfully deprived Alabama Always of equal protection: the Commissioners have intentionally treated Alabama Always differently from others similarly situated and there is no rational basis for this difference in treatment.

## **Parties**

8.    Plaintiff Alabama Always is an Alabama limited liability company and an applicant for an integrated facility license under Alabama's medical cannabis licensing program.

9.    Defendant Rex Vaughn is an individual who resides in Alabama and is a Commissioner of the Alabama Medical Cannabis Commission. Alabama Always sues Mr. Vaughn in his individual capacity.

10.    Defendant Sam Blakemore is an individual who resides in Alabama and is a Commissioner of the Alabama Medical Cannabis Commission. Alabama Always sues Mr. Blakemore in his individual capacity.

11.    Defendant Dwight Gamble is an individual who resides in Alabama and is a Commissioner of the Alabama Medical Cannabis Commission. Alabama Always sues Mr. Gamble in his individual capacity.

12.    Defendant James Harwell is an individual who resides in Alabama and is a Commissioner of the Alabama Medical Cannabis Commission. Alabama

Always sues Mr. Harwell in his individual capacity.

13.    Defendant Taylor Hatchett is an individual who resides in Alabama and is a Commissioner of the Alabama Medical Cannabis Commission. Alabama Always sues Ms. Hatchett in her individual capacity.

14.    Defendant Dr. William Saliski is an individual who resides in Alabama and is a Commissioner of the Alabama Medical Cannabis Commission. Alabama Always sues Dr. Saliski in his individual capacity.

15.    Defendant John McMillan is an individual who resides in Alabama and is the director of the Alabama Medical Cannabis Commission. Alabama Always sues Mc. McMillan in his individual capacity.

## Jurisdiction and Venue

16.    Alabama Always brings this lawsuit under 42 U.S.C. § 1983 for violations of rights secured by the United States Constitution.

17.    This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3).

18.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the actions and omissions giving rise to this complaint occurred within this District, and the events at issue—including the Commissioners' conduct towards Alabama Always—took place within this District.

## Facts

19.    In 2021, the Alabama Legislature passed the Darren Wesley "Ato" Hall

Compassion Act, which established a program for licensure of medical cannabis producers in Alabama.

20.    The Alabama Medical Cannabis Commission (the Commission) is charged with administering the licensing process, and the Commissioners are charged with awarding the licenses. The Compassion Act permits the Commission to employ a director (and other staff) to serve at its pleasure. Ala. Code § 20-2A-20(i)(1). Defendant McMillan serves as the director of the Commission.

21.    Alabama Always is an applicant for an integrated medical cannabis license under the Compassion Act and has met all requirements to be licensed, including having raised $15 million in paid-in capital and having built a multi-million-dollar cultivation facility in order to meet the program's stringent requirements that licensees be able to provide medical cannabis within 60 days of receiving a license, among other things.

22.    Alabama Always is almost certainly the most qualified applicant, and certainly one of the top five most qualified as others have not complied with the Compassion Act.

23.    The Compassion Act caps the number of integrated medical cannabis licenses available to five.

24.    The Commission's counsel, William Webster, drafted the regulations for the Commission and created the licensing process. The regulations and licensing

process largely failed to comply with the requirements of the Alabama Administrative Procedure Act. This would lead to lawsuits and communications that, in turn, would draw the ire of Webster and the defendants.

### The June 2023 Meeting and Subsequent Litigation

25.    On June 12, 2023, the Commissioners orally "awarded" licenses to five applicants and denied the application of Alabama Always.

26.    The Commissioners provided no explanation for the award of any license or for any of the denials.

27.    Because the Commissioners violated the Alabama Open Meetings Act and the Alabama Administrative Procedure Act, on June 22, 2023, Alabama Always sued to stop the violations and obtained a temporary restraining order from the circuit court of Montgomery County, Alabama setting aside the licenses that had been awarded and prohibiting the Commissioners from taking any action in furtherance of those June 2023 awards.

28.    Following the Commission's July 2023 meeting, an Alabama Always lawyer was told by a Commission staff member that the Commission destroyed the video recordings of each Commission meeting after the minutes for that meeting had been adopted. Counsel for Alabama Always then contacted the Commission's counsel to ascertain whether that was actually the Commission's practice. The Commission's counsel did not respond, so Alabama Always filed a motion to

prevent that practice.

29.    The Commission responded to Alabama Always's motion by asking the Montgomery County circuit court to bar Alabama Always from communicating with Commissioners and staff members. This was the Commission's first overt attempt to suppress Alabama Always's First Amendment rights.

30.    In response, Alabama Always filed a "Motion to Enforce First Amendment Rights" with the Alabama circuit court, asking the court to clarify that its lawyer could legally and properly communicate directly with Commissioners, relying on an Alabama State Bar opinion clearly establishing that the First Amendment allows Alabama lawyers to directly contact public officials on behalf of the lawyers' clients. (A copy of that July 24, 2024 motion is attached as **Exhibit A**.)

31.    The circuit court held that Alabama Always's lawyer could contact the Commissioners and announced in open court at an August 7, 2023 hearing that "this Court recognizes your First Amendment right to contact a public official even if you're in litigation with them." (The August 7, 2023, hearing transcript is attached as **Exhibit B**.) Alabama Always's First Amendment right to communicate with Commissioners through its lawyer was thus clearly established.

### The August 10, 2023 Meeting and Subsequent Litigation

32.    Prior to its August 10, 2023 meeting, the Commission posted an agenda

in which it stated that it planned to retreat into executive session to consider the awarding of integrated medical cannabis applications. On Sunday, August 6, 2023, Alabama Always filed a motion for a temporary restraining order to prevent the Commission from doing so, on the ground that such discussions in executive session would be a clear violation of the Open Meetings Act.

33.     On August 7, 2023, the circuit court held a hearing in which it expressed its opinion that Alabama Always's motion was premature because the August 10 meeting had not yet been held, and the Commission had not yet violated the Open Meetings Act with respect to that meeting. The circuit court did, however, insist on getting Commission counsel's commitment on the record that the Commission would not violate the Open Meetings Act during its August 10 meeting.

34.     But when August 10 rolled around, it was clear that the Commission, its staff, and its counsel violated the Open Meetings Act. The Commission retreated into executive session not only to discuss applications, but also to engage in a secret balloting process prohibited by the Open Meetings Act.

35.     Again, the Commissioners orally awarded licenses, yet provided no explanation for the award of any license or the denial of any licenses.

36.     The Commissioners retaliated against Alabama Always when they failed and refused to award a license to Alabama Always.

37.     On August 15, 2023, Alabama Always filed another motion for

temporary restraining order.

38.    On August 17, 2023, the circuit court held a hearing on Alabama Always's motion for temporary restraining order (based largely on Alabama Always's claim that the Commissioners violated the Open Meetings Act), and the Commission's lawyer, William H. Webster, on behalf of the Commissioners, angrily threatened Alabama Always and its counsel with retaliation for filing the motion for temporary restraining order. The Commission's counsel stated to the circuit court, while pointing towards the table where Alabama Always's lawyer was seated, that the Commissioners "will put forth everyone's dirty laundry and everyone will hear about it" if they cannot go into executive session at their meeting.

39.    On August 21, 2023, the circuit court entered a temporary restraining order prohibiting the Commission from taking any actions in furtherance of the August 10, 2023 awards.

40.    Mr. Webster's statements and threats on behalf of the Commissioners establish that the Commissioners have and will continue to intentionally and willfully retaliate against Alabama Always for legally challenging the Commission's repeated and intentional violations and illegal actions.

**Alabama Always's Communications with the Commissioners**

41.    In accordance with the circuit court's clear statement of law that the First Amendment permitted Alabama Always's lawyer to contact the

Commissioners on his client's behalf, Alabama Always engaged in efforts to inform the Commissioners about the violations and issues with the process.

42.    For example, Alabama Always's lawyer sent the Commissioners a letter on October 24, 2023, detailing flaws in the Commissioners' scoring system. (That letter is attached as **Exhibit C**.) Among the flaws that the letter identified were that the scoring system had never been adopted as a "rule" as required by the Alabama Administrative Procedure Act and that it rewarded applicants who did not satisfy the requirements of the Compassion Act.

43.    At the Commission meeting two days later, on October 26, 2023, Chairman Vaughn publicly read a prepared statement falsely accusing Alabama Always of attempting to "subvert" the process and of engaging in efforts "meant to generate misinformation." This clearly was an act of retaliation. Chairman Vaughn's prepared statement was drafted by or with the assistance of William H. Webster,[2] the Commission's lawyer, as part of the scheme concocted by Webster, Vaughn, and other Commissioners and staff members to retaliate against Alabama Always for opposing the Commission's manifold violations of the Open Meetings Act, the Alabama Administrative Procedure Act, and the Compassion Act and to enlist the support of other Commissioners to participate in that retaliatory conduct.

---

[2] Alabama Always does not currently have evidence that the letter was drafted by or with the assistance of Webster but believes that such evidence will be identified during the course of discovery.

44.     The Commission later admitted in a court filing before the circuit court of Montgomery County, Alabama, that the October 24, 2023 letter sent by Alabama Always was the subject of Chairman Vaughn's accusations. *See Alabama Always, LLC v. Alabama Med. Cannabis Comm'n, et al.*, Case No. 03-Cv-2024-900524, Doc. 480 at 12 n.4. (Relevant portions of that document are attached as **Exhibit D**.)

**The December 12, 2023 Meeting and Subsequent Litigation**

45.     The Commission held a meeting on December 12, 2023. After rescinding the August license awards, the Commission orally awarded licenses for a third time.

46.     Again, Alabama Always was not awarded a license, even though it remains one of the most, if not the most, qualified applicant for an integrated license. Prior to the meeting, the Commissioners were lobbied by Vaughn and others to vote for applicants other than Alabama Always. In fact, the Commission had adopted an emergency rule that created a procedure by which each commissioner ranked the thirty-eight integrated applicants. The average of these rankings would determine the order in which the applicants were considered by the Commission during the meeting. This system was devised by Webster and staff members to allow the system to be manipulated to retaliate against Alabama Always for exercising its First

Amendment rights.[3]

47.    The ranking system was subject to manipulation by Vaughn and the staff, who lobbied Commissioners to rank Alabama Always low so that it would not be considered for a license.[4] This manipulation was in retaliation for Alabama Always's exercising its First Amendment rights.

48.    Alabama Always has satisfied the Compassion Act's requirements, and had done so at the time it submitted its application—it obtained a $2 million performance bond, it built a multi-million-dollar facility, it raised $15 million in paid-in capital, and it demonstrated the ability to commence cultivation within 60 days after learning of a license award, among other things.

49.    The Commissioners have never provided any official explanation as to why Alabama Always has been denied a license. In fact, as will be seen, the only criterion that the Commissioners have publicly expressed for their licensure decisions is the lawsuits filed by Alabama Always and others.

---

[3] Alabama Always does not currently have evidence that Webster and the staff allowed the system to be manipulated to retaliate against Alabama Always but believes that such evidence will be identified during the course of discovery. For example, there have been reports that Commissioner Hatchett originally intended to attend the meeting remotely, but was persuaded by staff members to attend in person because the Open Meetings Act requires any remote voting to by roll-call vote audible to all members, and the ranking procedure was to be accomplished by written ballot. Other members attending remotely were not encouraged to attend in person.

[4] Alabama Always does not currently have evidence that Vaughn and the staff lobbied to rank Alabama Always low so that it would not be considered for a license but believes that such evidence will be identified during the course of discovery.

50.    When the Commissioners awarded licenses in December 2023, Alabama Always was again forced to file suit seeking a restraining order for the Commissioners' continued failure to comply with Alabama law.

51.    Once again, Alabama Always obtained a temporary restraining order against any actions taken in furtherance of the December awards.

**The Commission's retaliation: Alabama Always is one of the "bad guys" and its lawsuits are "frivolous"**

52.    It is evident that, in making its December 12, 2023 licensure decisions, the Commissioners, the Commission's director, their staff, and their lawyers were motivated by a desire to punish Alabama Always for filing lawsuits and communicating with the Commissioners, rather than by a desire to award licenses to the most qualified applicants.

53.    Statements by the Commission's director following the Commission's December 12, 2023 meeting reflect the Commissioners' and staff's continued desire to punish and discredit Alabama Always for filing lawsuits over the flawed process. These statements appear to reflect a concerted effort by Commissioners and their legal counsel to continue to influence other Commissioners to retaliate against Alabama Always.

54.    For example, when the Commission's director was interviewed on Alabama Public Television's "Capitol Journal" in late May 2024, he called the litigation "frivolous" and accused Alabama Always and other plaintiff applicants of

engaging in a "delaying tactic" rather than acknowledge the fundamental flaws in the Commission's award process:

> Well, nobody is more frustrated than our commission and our staff and certainly I am, because frankly, in my opinion, *most of these lawsuits are frivolous, but they have been used as a delaying tactic*. I hope to some extent and believe that a lot of the litigation came from the fact that, 'Well, let's just block everything. Let's just keep the commission from being able to do anything. Let's just shut this program down through the courts and try to get something settled in the legislature.' Just stop anything from happening until I try to get something through the legislature. That didn't happen, so, and again, might be back to my hopeful thinking that maybe some of that will diminish now that the legislature chose not to get involved in any changes in the program.

(*See* Caleb Taylor, *Alabama Medical Cannabis Commission Director John McMillan: 'Most of These Lawsuits are Frivolous*,' 1819 News, May 25, 2024 (emphasis added), attached as **Exhibit E**.)

55.     The sentiments that McMillan expressed in the press were repeated by Commission members in public, and clearly have contributed to a culture of First Amendment retaliation, designed to discourage applicants from exercising their First Amendment rights.

56.     At the Commissioners' December 2024 meeting, Commissioner Saliski urged his fellow Commissioners to "understand why this litigation is before us." (A transcript of the Commission's December 2024 meeting and transcript affidavit is attached as **Exhibit F**, at 29:5–6.)

57.     Commissioner Saliski's explanation of "why this litigation is before us"

is that the plaintiffs, including Alabama Always, whom he refers to as "the bad guys," are motivated by a desire to cause licensees to drop out:

> As a result and due to this litigation, there are people that in good faith have put money forward who may be -- may be struggling and may wind up having to forfeit their licensure because of nothing that they have done. So our main goal here and my – and my thought, and I think everyone's thought, is to get this product to the people who need it. *And if one or two of these people bail because they run out of money and we have to start again with new licensures; then, in my estimation, I think the bad guys win.*

(*Id.* at 29:8–20 (emphasis added).)

58.    Dr. Saliski's comments were adopted by other Commissioners.

59.    One Commissioner stated his opinion that the plaintiffs (including Alabama Always) were consciously engaging in a strategy of delay for the purpose of causing applicants or licensees to drop out:

> I think that's – I think that's part of the plaintiff's strategy. If you -- if you prolong it because you've got deep pockets, someone will fail and withdraw the license. Although, it's the -- the integrated plaintiffs; but that's part of the strategy. So I agree with Dr. Saliski or whoever made – made those comments.

(*Id.* at 29:24–30:6.)

60.    Chairman Vaughn then chimed in and made clear that everyone associated with the Commission agreed with Dr. Saliski: "That -- that was Dr. Saliski who talked about that. And he is exactly right, Judge Price. *And I think all of us would agree about everything he just mentioned.*" (*Id.* at 30:7–11 (emphasis added).)

61.    No Commissioner disagreed with anything any of these three

17

Commissioners said, publicly ratifying these false allegations.

62.    The Commissioners falsely classified Alabama Always as a "loser," denying it a license, while classifying other applicants as "winners," offering no legal reason why it did so. This was an act of retaliation.

63.    The Commissioners had no rational basis for treating Alabama Always differently from the "winners." Alabama Always's ability to satisfy the substantive requirements of the Compassion Act, such as having obtained a $2 million performance bond and having the ability to commence cultivation within 60 days after learning of a license award, met or exceeded all other applicants' ability.

64.    What's more, the Commissioners did not even attempt to offer a rational basis, or for that matter any basis, for treating Alabama Always differently from the "winners." The Commissioners adverse actions against Alabama Always are retaliatory.

65.    As detailed above, the Commissioners' and staff members' (including the director's) own statements show that they were motivated by an intent to discriminate and retaliate against Alabama Always for exercising its First Amendment rights to communicate with the Commissioners through its lawyers and to petition the government for redress of its grievances. Again, the only licensure criterion that any Commissioner has publicly identified is the filing of lawsuits by applicants such as Alabama Always.

66.    Alabama Always's First Amendment rights to petition the government to redress grievances and file lawsuits were clearly established rights that the Commissioners and the director violated by retaliation against Alabama Always. In other words, it is clearly established law that government officials (like the Commissioners and the director) cannot retaliate against a person as a result of a person's petition to the government or lawsuit.

67.    Alabama Always's First Amendment right to contact the government through its lawyer is clearly an established right that the Commissioners violated. In other words, it is clearly established law that government officials (like the Commissioners and the director) cannot retaliate against a person as a result of a person's lawyer contacting them.

## Count One
## (First Amendment Retaliation)

68.    At all relevant times, the Commissioners and the Commission's director were acting under color of the law of the State of Alabama, by virtue of the authority granted to them by the Compassion Act.

69.    Alabama Always had the right, pursuant to the First Amendment of the United States Constitution, via 42 U.S.C. § 1983, to express to the Commissioners through its lawyers that the licensing process violates the law.

70.    Alabama Always also had the right to file civil actions challenging the licensure process, including civil actions challenging the Commissioners' repeated

violations of the Alabama Open Meetings Act and the Alabama Administrative Procedure Act.

71.    Alabama Always engaged in First Amendment protected activities when it sent communications to the Commissioners through its lawyer and when it filed lawsuits challenging the licensing process.

72.    Alabama Always's communications related to the functioning of the Commission, a public agency, and therefore involved matters of public concern.

73.    Alabama Always suffered adverse actions as a result of its activities.

74.    The Commissioners denied Alabama Always a license on December 12, 2023 in retaliation against Alabama Always for exercising its First Amendment rights to file lawsuits and petition the Commissioners.

75.    The Commissioners' and Commission staff members' (including the director's) repeatedly and publicly made false statements accusing Alabama Always of "subverting" the process and "intentionally delaying the process" for its exercise of its First Amendment rights establishes that the Commissioners were motivated by an intent to retaliate against and penalize Alabama Always for exercising its First Amendment rights.

76.    The Commissioners' and the director's acts of discrimination and retaliation toward Alabama Always have a chilling effect and will deter a person of ordinary firmness from exercising his or her constitutionally-protected First

Amendment rights to petition the government for a redress of grievances.

77.    The Commissioners' and the director's acts have a chilling effect on speech.

78.    The Commissioners' and the director's acts were undertaken willfully, maliciously, fraudulently, in bad faith, beyond their authority, and/or under a mistaken interpretation of the law.

79.    As a proximate consequence of the actions of the Defendants in violation of the First Amendment, via 42 U.S.C. § 1983, Alabama Always has suffered and will continue to suffer damage to its business and professional reputation, loss of business, loss of revenue and income, future losses, embarrassment, public shame, and future business.

FOR THESE REASONS, Alabama Always asks this Court to enter judgment against Defendants, award Alabama Always compensatory damages, award Alabama Always the costs of lost revenue and income, award Alabama Always punitive damages, award Alabama Always its costs, expenses, interest, and attorneys' fees pursuant to 42 U.S.C. § 1988, and grant such other legal and further relief as the Court deems just and proper.

## Count Two
### (Denial of Equal Protection Relating to December 12 License Awards)

80.    At all relevant times, the Commissioners were acting under color of the law of the State of Alabama, by virtue of the authority granted to them by the

Compassion Act.

81.     In the discharge of their duties, the Commissioners were required under the Fourteenth Amendment to the United States Constitution to accord Alabama Always the equal protection of the laws.

82.     Alabama Always is, for all purposes relevant to the requirements of the Compassion Act, similarly situated to the applicants who were awarded integrated medical cannabis licenses on December 12, 2023. In fact, Alabama Always satisfied the statutory requirements for licensure, whereas many of the awardees did not.

83.     By awarding licenses to applicants who did not satisfy the requirements of the Compassion Act, and by denying a license to Alabama Always, the Commissioners deprived Alabama Always of the equal protection of the laws of the State of Alabama.

84.     The Commissioners offered *no* explanation or rational factual or legal basis for denying an integrated medical cannabis license to Alabama Always on December 12, 2023.

85.     The Commissioners offered *no* explanation or rational factual or legal basis for awarding an integrated medical cannabis license to applicants other than Alabama Always on December 12, 2023.

86.     The Commissioners' December 12, 2023 decisions were illegal, retaliatory, irrational, and wholly arbitrary.

87.   The only conceivable basis for the Commissioners' decision to deny Alabama Always a license on December 12, 2023 is the Commissioners' belief, expressed later, that Alabama Always is a "bad guy" for pursuing its legal rights in court and communicating with the Commissioners.

88.   The Commissioners' and the director's acts were undertaken willfully, maliciously, fraudulently, in bad faith, beyond their authority, and/or under a mistaken interpretation of the law.

FOR THESE REASONS, Alabama Always asks this Court to enter judgment against Defendants, award Alabama Always compensatory damages, award Alabama Always the costs of lost revenue and income, award Alabama Always punitive damages, award Alabama Always its costs, expenses, interest, and attorneys' fees pursuant to 42 U.S.C. § 1988, and grant such other legal and further relief as the Court deems just and proper.

**ALABAMA ALWAYS DEMANDS TRIAL BY JURY.**

Respectfully submitted,

/s/ William G. Somerville
WILLIAM G. SOMERVILLE
JAY SAXON
JADE E. SIPES
LINDSAY P. LOUNSBURY

**OF COUNSEL:**
BAKER, DONELSON, BEARMAN,
   CALDWELL & BERKOWITZ, PC
1901 Sixth Avenue North, Suite 2600
Birmingham, Alabama 35203

wsomerville@bakerdonelson.com
jsaxon@bakerdonelson.com
jsipes@bakerdonelson.com
llounsbury@bakerdonelson.com

## **TO BE SERVED PRIVATE PROCESS SERVER:**

Mr. Rex Vaughn
2622 Old Monrovia Rd NW
Huntsville, Alabama 35806

Dr. Samuel Blakemore
596 Bristol Lane
Birmingham, Alabama 35226

Dwight Lynn Gamble
1658 Strickland Rd
Headland, Alabama 36345

Benjamin James Harwell, III
1072 Needle Eye Road
Equality, Alabama 36026

Taylor Hatchett
436 County Road 622
Thorsby, Alabama 35171

Dr. William Saliski, Jr.
7165 Wynlakes Blvd.
Montgomery, Alabama 36117

Director John McMillan
Alabama Medical Cannabis Commission
445 Dexter Avenue, Suite 8040
Montgomery, Alabama 36104

Attorney General Steve Marshall
11 South Union Street
Montgomery, Alabama 36130